IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CHRISTINE JACKSON,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )        CIVIL ACTION NO. 11-0533-N
                                  )
MICHAEL J. ASTRUE, Commissioner   )
Of Social Security,               )
                                  )
        Defendant.                )

ORDER

In this action, plaintiff appeals the final decision of the Commissioner denying her claim

for a period of disability and disability insurance benefits and for supplemental security income.

The parties have consented to the jurisdiction of the undersigned magistrate judge (doc. 20) and

this matter has been referred to the undersigned for all purposes including entry of judgment in

accordance with 28 U.S.C. §636(c) and Fed.R.Civ.P. 22 (doc. 22).  The parties have also waived

oral argument (docs. 21, 23).  After careful consideration of the parties' briefs, the administrative

transcript and all matters in the record, the court finds that the decision of the Commissioner is

due to be AFFIRMED.

Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits

("DIB") and for supplemental security income on March 4, 2009, alleging that she became

disabled beginning on December 24, 2008.  Doc. 13 at 145-52.  Her claims were initially denied

on May 14, 2009.  Id., at 59.  Plaintiff requested and received a hearing before an Administrative

Law Judge ("ALJ") which was held on April 27, 2010.  The ALJ issued an unfavorable decision

on June 22, 2010.  Id., at 9-21.  The Appeals Council denied review, id., at 1-5, rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff timely filed the instant appeal.

Facts[1]

The ALJ found that plaintiff suffered the following severe impairments: status post left wrist fracture and open reduction internal fixation surgery, carpal tunnel syndrome in her left wrist, diabetes mellitus, and hypertension.  Plaintiff had also claimed the following impairments: depression, mentioned during the hearing but never diagnosed or treated; and an injury to plaintiff's left knee for which plaintiff was to obtain an MRI and x-rays, but was unable to afford to do so. Plaintiff does not challenge the ALJ's rulings that these were not severe impairments.

In addition, plaintiff notes another condition—obesity—which was identified in the medical records but which the ALJ failed to address in determining plaintiff's residual functional capacity.  The court is unable to discover any form, argument of counsel, or testimony by the plaintiff in the administrative record in which plaintiff claimed that condition caused any impairment that contributed to her disability; rather, her weight appears to have been mentioned only in medical records made part of the administrative record.  Plaintiff cites an entry in an office note from Dr. Ronnie Chu dated April 23, 2004, and a progress note from the Marengo Family Health Center dated May 15, 2001, as evidence of the fact that plaintiff had a high Body Mass Index ("BMI").  See doc 15 at 7 (citing doc. 13 at 310 and 319).[2]  Plaintiff claims disability beginning in 2008; her BMI declined from 2001 to 2004, and there is no evidence in the record

_____

[1] Except as otherwise noted, the facts are drawn from the ALJ's decision.

[2] The Marengo Family Health Center record notes a BMI of 36 in 2001; Dr. Chu stated that her BMI was 34 in 2004.

2

concerning her weight or BMI at the time of her claimed disability, at the administrative hearing or at any time thereafter.

At the hearing, the ALJ asked plaintiff about a mention of depression in plaintiff's records. *See* doc. 13 at 80. She testified that she was upset because she thought the surgery would make her better, and that she worried about being unable to work or to do her share. Id. The ALJ found that no doctor had diagnosed plaintiff as having any mental disorder, including depression, id. at 14-15. The ALJ also found that plaintiff's alleged condition had not existed for a period of 12 months, and thus was not "severe".[3]

Plaintiff notes that she had mentioned depression in her original application, doc. 13 at 192, and at the hearing. The court has found one other reference to depression in the administrative record.[4] It was mentioned in a questionnaire which plaintiff completed, id., at 364-66. The date and source of the questionnaire are not clear from the record, but it is indexed among the medical records submitted by plaintiff's orthopedic surgeon, Dr. Tropeano.

Plaintiff fractured her left distal radius on December 25, 2008. She underwent an open reduction and internal fixation procedure in January 2009, performed by Dr. Tony Tropeano. Plaintiff continued to be treated by Dr. Tropeano for approximately seven months. Plaintiff continued to complain of wrist pain and related problems, and underwent two rounds of physical therapy for her wrist. She continued to have limited range of motion and complaints of pain.

Legal Standard

---

[3] An impairment is deemed "severe" if it significantly limits an individual's ability to perform basic work activities. *See* 20 C.F.R. §§404.1521 and 416.921.

[4] The illegibility of the copies of certain medical records makes it difficult for the court to be certain whether the records contain any other mention of depression. Plaintiff has cited no other specific pages in the record mentioning depression prior to the hearing.

Scope of Judicial Review.

In reviewing claims brought under the Social Security Act, this Court's role is a limited one. Specifically, the Court's review is limited to determining: 1) whether the decision is supported by substantial evidence, and 2) whether the correct legal standards were applied. *See*, 42 U.S.C. § 405(g); Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). Thus, a court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996); Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). Rather, the Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Chater, 84 F.3d at 1400; Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991). *See also*, Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the Secretary's factual findings, we must affirm if the decision reached is supported by substantial evidence."); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[ ]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Lynch v. Astrue, 358 Fed.Appx. 83, 86 (11th Cir. 2009); Martino v. Barnhart, 2002 WL 32881075, * 1 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). Even where there is substantial evidence to the contrary of the ALJ's findings, the ALJ decision will not be overturned where "there is substantially supportive evidence" of the ALJ's decision. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).

Statutory and Regulatory Framework.

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled.  Patterson v. Bowen, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920

(2010).  The Eleventh Circuit has described the evaluation to include the following sequence of determinations:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[5]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* Bell v. Astrue, 2012 WL 2031976, *2 (N.D. Ala. May 31, 2012); Huntley v. Astrue, 2012 WL 135591, *1 (M.D. Ala. Jan. 17, 2012).

The burden of proof rests on a claimant through Step 4. *See* Phillips v. Barnhart, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying disability once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238–39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. Id. It also can contain both exertional and nonexertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers

---

[5] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P, app. 2 ("grids"), or hear testimony from a vocational expert (VE). Id. at 1239–40.

Issues

Plaintiff raises the following five issues in this appeal:

1. The ALJ erred in not giving substantial weight to the opinion of the treating physician;

2. The ALJ's physical residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ ignored the impact of all of plaintiff's impairments;

3. The ALJ failed to utilize the PRTF (psychiatric review technique form) framework in analyzing plaintiff's mental impairments;

4. The ALJ erred by failing to address and consider plaintiff's morbid obesity in connection with her RFC; and

5. The ALJ erred in failing to find that plaintiff's limitations met or equaled Listing 9.08.

Analysis

Opinions of Treating Physician

From December 28, 2008 to July 17, 2009, plaintiff was treated by Tony Tropeano, M.D., an orthopedic surgeon, for a fracture of her left wrist.  Doc. 13 at 357-396, 434-446.  In his record of plaintiff's last visit for her wrist on July 17, 2009, Dr. Tropeano noted that plaintiff's left wrist "still has a tremendous amount of stiffness with it especially with dorsiflexion of the

wrist and supination of the wrist" but that her wrist was "for the most part in good alignment" and otherwise generally well healed.  Id. at 385.[6]

On April 23, 2010, Dr. Tropeano completed a Medical Source Statement (Physical) at and a Clinical Assessment of Pain form concerning the plaintiff.  Id. at 411-415.  In the Medical Source Statement, Dr. Tropeano was unable to state how long plaintiff could sit, stand or walk, but opined that she could lift and carry up to 10 pounds occasionally, can grasp objects occasionally with her left hand, and could never do fine manipulation or push/pull arm controls with her left hand; her right hand was not limited.  Dr. Tropeano also noted that plaintiff could use her feet for pushing/pulling leg controls frequently, and can frequently stoop, crouch or kneel, occasionally reach overhead, and never crawl, climb, or balance.  He stated that she could frequently drive and be exposed to dust, fumes and gases, chemicals, noise, and vibration, could occasionally be around moving machinery, and could never work in unprotected heights or be exposed to marked changes in temperature and humidity.  Dr. Tropeano stated that he anticipated that plaintiff's problems would cause her to miss work more than three times per month.  He also stated that the limitations are normally to be expected from an injury like plaintiff's, that the diagnoses are confirmed by objective medical findings, and that the limitations had existed since December 2008.

On the Clinical Assessment of Pain form, Dr. Tropeano provided the following medical opinions: that plaintiff's pain would be distracting to adequate performance of daily activities; that basic movements would cause greatly increased pain such as would cause distraction from or abandonment of task; that the medications he had prescribed her could be expected to cause

---

[6] His one-paragraph note also addressed plaintiff's left knee, but Dr. Tropeano stressed the stiffness in plaintiff's left wrist, mentioning it three times.  Id.  He stated that he wanted plaintiff to "keep pushing" it to "try to make it as normal as possible."  Id.

significant side effects which may limit effectiveness in work duties or performance of everyday tasks; that her pain and side effects of her medications would be likely to be severe and to limit plaintiff's effectiveness due to distraction, inattentiveness, and drowsiness; that over the long term, he expected plaintiff's pain to diminish but to remain a significant element in her life; and that plaintiff's condition could be expected to cause the pain of which she complained to him.

The opinions of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ gave Dr. Tropeano's opinions "partial weight" on the basis that he felt that they were not supported by objective evidence and that the assessment "seems to be based entirely upon Claimant's subjective complaints." Id. at 18. Specifically, the ALJ accepted Dr. Tropeano's opinions only as to plaintiff's lifting capacity, reaching, "certain" postural limitations, and working in extreme temperatures or on unprotected heights, and rejected all other opinions.

Plaintiff argues that the ALJ's findings in support of his decision not to give Dr. Tropeano's opinions substantial or considerable weight were not supported by substantial evidence. Plaintiff points to Dr. Tropeano's treatment notes and records, stating that they contain numerous references to complications and continued difficulties following surgery. In addition, the plaintiff notes that the ALJ based his determination in part on a misreading of the record: while the ALJ pointed out that plaintiff consistently told her physical therapist that she suffered mild pain—specifically, pain at a 2 on a ten-point scale—the plaintiff points to the physical therapist's records to show that the therapist used a five-point scale. Plaintiff's reports of pain were thus consistently greater than understood by the ALJ. Nonetheless, that point was

but one of the reasons given for the ALJ's decision to discount portions of Dr. Tropeano's opinions.

In his decision, the ALJ discounted certain opinions of Dr. Tropeano which the ALJ held were not supported by his treatment notes[7], and that there was no objective basis provided for his opinion that plaintiff would miss work three or more days per month.  Doc. 13 at 18.  The ALJ also declined to give significant weight to opinions relating to matters unrelated to the wrist problems for which Dr. Tropeano had treated plaintiff, such as limitations in plaintiff's ability to balance.  Id. The ALJ further noted that Dr. Tropeano completed the forms containing the challenged opinions approximately nine months after he last saw or treated the Claimant.   While the ALJ did not expressly hold that Dr. Tropeano was no longer plaintiff's treating physician, it is clear that the lack of a recent treating relationship was a part of the ALJ's basis for declining to give Dr. Tropeano's opinions substantial or considerable weight.[8]  The ALJ also noted that Dr. Tropeano's opinions relied appeared to rely on plaintiff's subjective complaints of pain; that his opinion that plaintiff could not operate arm controls was inconsistent with his opinion that she could drive an automobile; and that the plaintiff's failure to get prescribed pain medication and to undergo a recommended procedure to reduce pain undermined Dr. Tropeano's opinions

---

[7]    Plaintiff also states that the treatment notes contain numerous references to complications from surgery and objective observations of plaintiff's continuing problems. Plaintiff points to no such evidence; a review of all such treatment notes shows only repeated reference to issues with range of motion and grip strength after the surgery.  Doc. 13 at 370, 373, 377, 379, 382, 385) but no other negative objective findings.  In addition, there are references to mild tenderness at the surgical site. The records do not demonstrate the sort of clear support claimed by plaintiff.

[8]  "Although Dr. Tropeano *previously served* as the Claimant's treating physician, his opinion has been afforded only partial weight."  Doc. 13 at 18 (emphasis added).  "To qualify as a treating source, the physician must have an ongoing treatment relationship with the claimant." Reynolds-Buckley v. Comm'r of Social Sec., 457 Fed.Appx. 862, 864 (11th Cir. 2012) (*citing* 20 C.F.R. § 404.1502).

concerning plaintiff's pain levels.  Id.  It is in relation to this last point—which appears to be the least of the reasons given by the ALJ for discounting Dr. Tropeano's opinions—that the ALJ incorrectly held that plaintiff had reported only mild pain to her physical therapist.  However, that error in the ALJ's explanation of the weight given the rejected opinions does not render that decision unsupported by the record.  See Wright v. Barnhart, 153 Fed.Appx. 678 (11th Cir. 2005)(harmless error analysis applied to reasons for reduced weight of physician opinion).[9]  The court finds no reversible error in the ALJ's decision to give reduced weight to the opinions of plaintiff's orthopedic surgeon.

ALJ Did Not Address All Physical Impairments in RFC

Plaintiff asserts that the ALJ's decision that plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work was flawed by the ALJ's failure to consider plaintiff's complaints of frequent urination and obesity.  With regard to the latter condition, as set forth in more detail below, the record does not support plaintiff's claim to have been obese; the two references to plaintiff's body mass index ("BMI") in her medical records predate plaintiff's claim of disability by several years.

Where a claimant alleges more than one impairment, the Commissioner has a duty to consider the cumulative effects of the impairments in making the determination as to whether the claimant is disabled.  Jones v. Dep't of Health & Hum. Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).  Under the law in the Eleventh Circuit this burden is met where the ALJ expressly states

---

[9]  In Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989), the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result. In Ward v. Commissioner of Social Security, 211 F.3d 652, 656 (1st Cir. 2000), the court held that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.

he has considered all of the medical evidence and concludes Plaintiff is not suffering from an impairment, or a combination of impairments which meets a listing. Id.

With regard to plaintiff's complaints of frequent urination, made to Dr. Ronnie Chu on four occasions (doc. 13 at 291, 293, 303, and 309) from 2005 to 2009, plaintiff has not demonstrated any limitation on her ability to perform work functions resulting from this intermittent problem. Dr. Chu's treatment notes do not indicate treatment for this condition, which was never described as a primary complaint or as causing plaintiff significant discomfort or difficulties.  Dr. Chu opined that her urinary frequency fluctuated with fluctuations in her glucose levels.  Id. at 303.  In light of the ALJ's finding that plaintiff's diabetes was well-controlled with medication, there is no reason to believe that the ALJ's decision would have been impacted by express consideration of the plaintiff's urinary difficulties.

Analysis of Mental Limitations Related to Depression

Plaintiff argues that the ALJ failed to properly address her potential impairments caused by depression.  Where a claimant has raised a "colorable claim of mental impairment, the social security regulations require the ALJ to complete a [Psychiatric Review Technique Form ("PRTF")] and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." Moore v. Barnhart, 405 F.3d 1208, 1213–14 (11th Cir. 2005); see 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2)[10]. "This technique requires

_____

[10] At 20 C.F.R. §§ 404.1520a(a), 416.920a(a), the Social Security regulations state that "we must follow a special technique at each level of the administrative process," which helps to: "(1) Identify the need for additional evidence to determine impairment severity; (2) Consider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and (3) Organize and present our findings in a clear, concise, and consistent manner." "Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1) (citing 20 C.F.R. §§ 404.1508, 416.908, for what is needed to (Continued)

separate evaluations on a four-point scale of how the claimant's mental impairment impacts four functional areas: 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.' " <u>Moore</u>, 405 F.3d at 1213 (*citing* 20 C.F.R. § 404.1520a(c)(3–4)); 20 C.F.R. § 416.920a(c)(3–4)). "The ALJ is required to incorporate the results of this technique into the findings and conclusions." <u>Id</u>., at 1213–14 (*citing* 20 C.F.R. § 404.1520a(e)(2)); 20 C.F.R. § 416.920a(e)(2).

A colorable claim need not be a meritorious claim. In general, a "colorable claim" is one which is not "wholly unsubstantial and frivolous." <u>Bell v. Hood</u>, 327 U.S. 678, 682–83 (1946)("arising under" jurisdiction); <u>Wayte v. U.S.</u>, 470 U.S. 598, 623–24 (1985)(in selective prosecution defense, defendant must allege sufficient facts to take question past frivolous state); <u>Jaen–Chavez v. U.S. Atty.Gen.</u>, 415 Fed.Appx. 964, 967 (11th Cir. 2011) (*quoting* <u>Arias v. U.S. Atty.Gen.</u>, 482 F.3d 1281, 1284 (11th Cir. 2007)("For a constitutional claim to be colorable, the alleged violation need not be substantial, but the claim must have some possible validity.")).

---

show a medically determinable impairment)). The regulations then state that "[i]f we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings in accordance with paragraph (e) of this section." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b) (1). Paragraph (e) is labeled "Documenting application of the technique" and provides certain rules relevant to the application of the technique, including that the ALJ's written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). Finally, paragraph (c) lists the "four broad functional areas in which we will rate the degree of your functional limitation" as "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

Courts applying the requirement that an ALJ use the PRTF framework in relation to Social Security claims of mental impairment have done so consistently with this generally-applicable standard. For example, in Spitler v. Astrue, 2011 WL 4055416, at *14 (M.D.Fla.2011), the court held that a claimant did not present a colorable claim of mental impairment where her attorney did not raise any mental impairment at the hearing before the ALJ, and the only medical record relating to a mental impairment was submitted for the first time to the Appeals Council.

In Turner v. Astrue, 2011 WL 5827324 (S.D.Ala. Nov. 18, 2011), the court held that the ALJ did not err by failing to use the PRTF framework where plaintiff (1) had not raised depression in initial application, (2) the ALJ had expressly found that plaintiff did not suffer from depression, and (3) the plaintiff had never been diagnosed with depression or received treatment other than a one-time prescription for anti-depressant medication. *See also* Meadows v. Astrue, 2010 WL 3614157, *6 (N.D.Ga. Sept. 7, 2010)(finding no colorable claim where record contained one notation of depression and two notations of anxiety, primary physician prescribed antidepressant, and plaintiff had not sought mental health treatment, despite alleging suicidal ideation, panic attacks and crying spells); Sesberry v. Astrue, 2010 WL 653890, *3, *5 (M.D.Fla. Feb. 18, 2010)(no colorable claim where only 2 notations "even hint at" mental impairment, though physician referred plaintiff for psychiatric evaluation and prescribed antidepressant but no records of evaluation or mental health care); Kellerman v. Astrue, 2009 WL 3586554, *7 (M.D.Fla. Oct. 28, 2009)(no colorable claim where plaintiff was prescribed antidepressant, but no mention at hearing and only one medical record relating to depression); *but see* Martin v. Commissioner of Social. Sec., 2011 WL 3269682, at *4–5 (M.D.Fla. 2011)

14

(plaintiff made claim based on depression, and addressed at hearing; mentioned symptoms indicative of depressed mood.  PRTF analysis required).

In light of the precedent cited above, the court finds that plaintiff failed to raise a colorable claim of depression.  For that reason, the ALJ was not required to utilize the PRTF framework to address plaintiff's mention of depression. Plaintiff's third assignment of error is without merit.

Obesity

As noted above, the administrative record contains no evidence that plaintiff was obese when she filed her claim or at the time of the hearing.  The record contains only two notations concerning plaintiff's Body Mass Index ("BMI"); both notations predate plaintiff's claimed disability by several years.  Plaintiff never claimed disability or impairment caused by her weight, and her attorney did not mention her weight at the hearing.  On the basis of the record before the court, plaintiff has failed to show that her weight caused any limitation in her ability to perform work-related functions, or that the ALJ erred by failing to address plaintiff's weight in denying her disability claim.  Plaintiff's fourth assignment of error is without merit.

Diabetes Listing

Plaintiff's final argument is that the evidence of record does not support the ALJ's determination that plaintiff's diabetes does not meet or medically equal section 9.08 of the Listings.  The ALJ held that plaintiff did not satisfy the requirements of section 9.08 because "she as not had neuropathy, acidosis, or retinitis proliferans as a result of or in connection with her diabetes mellitus."  Doc. 13 at 15.  Plaintiff notes that the record includes a diagnosis of diabetic neuropathy in both feet in March 22, 2007, by Dr. Ronny Chu, who prescribed Lyrica to treat that condition.  The broad assertion of the ALJ is thus wrong.

However, the ALJ's error—overlooking the diagnosis of neuropathy—constitutes harmless error[11] and does not require remand.  Section 9.08[12] requires that a claimant have (A) neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); OR (B) acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or pC02 or bicarbonate levels); OR (C) retinitis proliferans, evaluating the visual impairment under the criteria in 2.02, 2.03, or 2.04.

Though plaintiff's medical records show the existence of neuropathy, they do not demonstrate the existence of significant and persistent disorganization of motor function caused by her diabetes.  Plaintiff does not cite any records making such a diagnosis.  Without such a showing, the ALJ could not have found plaintiff's diabetes met listing 9.08.  In addition, the ALJ found that plaintiff's medical records demonstrated that her diabetes was well-controlled with medication.[13]  Doc. 13 at 17.  Accordingly, the court finds that any legal error in the ALJ's failure to recognize the existence of a diagnosis of diabetic neuropathy in applying listing 9.08 to plaintiff's case was harmless.

---

[11] *See* Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (finding an error harmless where the ALJ would have reached the same decision despite the error); *see also* Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (finding harmless error where the ALJ gave some erroneous reasons but other legally valid ones).

[12] The court quotes section 9.08 as it appeared at the time of the hearing, prior to the amendment in June 2011.

[13] "The Claimant has also been periodically treated for her diabetes mellitus.  The objective medical evidence indicates the Claimant's diabetes is well controlled.  Laboratory results from April 2009 show the Claimant's hemoglobin A1C was 5.9% (Ex. 3F).  This value strongly indicates the Claimant's diabetes was under control."  Id.  Further, at the hearing, the ALJ noted that plaintiff's had an A1C rating of 5.9; plaintiff agreed that was a good reading. Id. at 83.

<u>Conclusion</u>

For the foregoing reasons, it is hereby ORDERED that the decision of the Commissioner denying plaintiff's claims for benefits is AFFIRMED.

DONE this the 18th day of September, 2012.

/s/  Katherine P. Nelson
UNITED STATES MAGISTRATE JUDGE